UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VESAL YAGHOOBI,<br><br>    Plaintiff,<br><br>    v.<br><br>TUFTS MEDICINE, ET AL.,<br><br>    Defendants. | Civil Action No. 23-cv-12479-DLC<br><br><br>**ORDER** |

**CABELL, Magistrate Judge**

Vesal Yaghoobi, a resident of Fairfax, Virginia, initiated this action on October 23, 2023 by filing a *pro se* complaint [ECF No. 1], a motion for leave to proceed *in forma pauperis* [ECF No. 2], and a motion for appointment of counsel [ECF No. 3]. For the reasons stated below, the court will deny the motions without prejudice and direct Yaghoobi to file an amended complaint.

**I.      Motion for Leave to Proceed *in Forma Pauperis***

A person commencing a non-habeas civil action must (1) pay a $350 statutory fee, *see* 28 U.S.C. § 1914(a), and a $55 administrative fee; or (2) or file an application to proceed without prepayment of fees (also referred to as a motion or application to proceed *in forma pauperis*), *see* 28 U.S.C. § 1915(a)(1). A person seeking to proceed *in forma pauperis* in a federal district court must submit a financial affidavit that identifies all of the litigant's assets and shows that she is unable to pay the filing fee. *See* 28 U.S.C. § 1915(a)(1). The determination of what constitutes "unable to pay" is left to the sound discretion of the district court based on the information submitted by the plaintiff. *Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 (S.D.N.Y.) (citing *Williams v. Estelle*, 681 F.2d 946, 947 (5th Cir. 1982)), *aff'd*, 52 Fed. App'x 157 (2d Cir. 2002).

"[O]ne must [not] be absolutely destitute to enjoy the benefit of the [*in forma pauperis*] statute," and the *in forma pauperis* statute does not require an individual to "contribute . . . the last dollar they have or can get." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Rather, the litigant must show she cannot pay the filing fee "and still be able to provide [her]self and dependents with the necessities of life." *Id.* "In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.'" *Fridman*, 195 F. Supp. 2d at 537 (quoting *Williams v. Spencer*, 455 F. Supp. 205, 208–09 (D. Md. 1978)).

In her motion for leave to proceed *in forma pauperis*, Yaghoobi represents that she has employment income but does not identify the amount thereof. For present purposes, the court assumes that the employment income amount she reported in similar motions filed in this court on October 19, 2023, *see Yaghoobi v. Vinfen Behav. Health Ctr.*, C.A. No. 23-12393-DLC [ECF No. 2], and October 20, 2023, *see Yaghoobi v. Tufts Med. Ctr*, C.A. No. 23-12464-DLC [ECF No. 2], applies equally to this action.

Yaghoobi states that her monthly expenses consist of rent, payment on a personal loan, and payment for credit card debt.[1] However, it is unclear how she accesses the basic necessities of life in light of her financial obligations. Accordingly, the motion for leave to proceed *in forma pauperis* is DENIED without prejudice. If Yaghoobi wishes to proceed without prepayment of the filing fee, she must file a renewed motion for leave to proceed *in forma*

---

[1] Yaghoobi also identifies an automobile lease as one of her monthly expenses. However, she indicates elsewhere in the *in forma pauperis* motion that she and her sister share "ownership" of a vehicle and that the sister drives and makes payments on the car. Without further clarification from Yaghoobi, the court assumes that her sister makes the automobile lease payment that Yaghoobi identifies as one of her monthly expenses.

*pauperis* by submitting a completed Application to Proceed in District Court Without Prepaying Fees or Costs. She must also supplement the form with additional information demonstrating how she is provided the basic necessities of life and must report any support—monetary or in kind—she receives from other individuals such as a relative or other next friend.

## II. Subject Matter Jurisdiction

A court has an obligation to inquire *sua sponte* into its own jurisdiction. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gun v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Calderon–Serra v. Wilmington Trust Co.,* 715 F.3d 14, 17 (1st Cir. 2013) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation marks omitted)).

To invoke a federal district court's subject matter jurisdiction, a plaintiff must allege either that her cause of action arises under federal law or that the court has diversity jurisdiction over the matter. *See* 28 U.S.C. § 1331 (federal question) and § 1332 (diversity). To establish diversity jurisdiction, a plaintiff must assert that the parties are citizens of different states, *see* § 1332(a)(1), and that the amount in controversy in this action exceeds $75,000, *see* § 1332(b). In conducting this review, the court liberally construes Yaghoobi's complaint because she is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### A. Complaint

In her complaint [ECF No. 1], Yaghoobi states that on June 29, 2023, she received medical care at Tufts Medical Center for a sore throat. Compl. at 16. According to Yaghoobi, when reviewing the bill for this care and her medical records at Tufts Medicine, she discovered

3

some of her medical records were "hidden" and other "discrepancies that raise serious concerns about the handling and transparency of her health information." *Id.* at 15, 16. Yaghoobi claims her subsequent requests for clarification and correction of available information and for additional particulars were unsuccessful. Yaghoobi states that "she has been severely disturbed" by this experience and that the alleged events have "made [her] lose trust in the United States medical system would negatively affect [her] career as a Physician." *Id.* at 21. In her prayer for relief, she asks that the defendants be required to answer specific questions about her medical records. She does not ask for monetary damages.

      **B.**      **Federal Question Subject Matter Jurisdiction**

In her complaint, Yaghoobi invokes the court's federal question jurisdiction and contends that the defendants are liable to her under the federal Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat. 1936 (1996) ("HIPPA")[2] and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Compl. at 3.

Yaghoobi's claim under HIPPA is not cognizable. While the government may impose civil and criminal penalties on those who violate HIPAA, *see* 42 U.S.C. §§ 1320d-5, 1320d-6, HIPAA does not create a private right of action, *see, e.g.*, *Wassef v. Tibben*, 68 F.4th 1083, 1089 (8th Cir. 2023); *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 242 (2d Cir. 2020); *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596-97 (6th Cir. 2019); *Seiller v. Nichols*, 586 F.3d 53, 59-60 (1st Cir. 2009). In other words, it does not provide an independent basis by which a private party may bring a lawsuit against a person or entity that has violated HIPAA's requirements.

In addition, Yaghoobi's civil RICO claims fails to state a claim upon which relief may be

---

[2] HIPAA provides generally for the confidentiality of medical records. *See* 42 U.S.C. §§ 1320d-1 to 1320d-9.

4

granted.  To state a civil RICO claim, a plaintiff must sufficiently allege that (1) the defendant committed a RICO violation, as defined in 18 U.S.C. § 1962; and (2) the plaintiff was "injured in his business or property by reason of a violation" of RICO's substantive restrictions.  28 U.S.C. § 1964(b).  To allege that a defendant committed a RICO violation, "a plaintiff must allege . . . (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  *N. Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 42 (1st Cir. 2001); *see also* 18 U.S.C. § 1962(c).

The court cannot reasonably infer from Yaghoobi's allegations concerning her medical records that the defendants committed a RICO violation.

More significantly, even if Yaghoobi could allege that the defendants committed a RICO violation, nothing in her pleading suggest that she was "injured in [her] business or property by reason of" said violation.  28 U.S.C. § 1964(c).  Yaghoobi's identified injuries are that the defendants' alleged misconduct "disturbed" her, "made [her] lose trust in the United States medical system which would negatively affect [her] career as a physician," and "interfere[ed] with [her] medical education."  Compl. at 21.  These nebulous injuries are not compensable in a RICO action.  *See*, *e.g.*, *Bowen v. Adidas Am. Inc.*, 84 F.4th 166, 177 (4th Cir. 2023) ("[I]njury to a "mere expectancy" of the loss of an opportunity is insufficient for a civil RICO cause of action."); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 888-89 (10th Cir. 2017) ("[A] plaintiff cannot recover for emotional, personal, or speculative future injuries under § 1964(c)."); *Zareas v. Bared-San Martin*, 209 Fed. App'x 1, 2 (1st Cir. 2006) (per curiam) ("[C]laims for personal injuries, such as emotional distress, are not 'business or property' and are not cognizable under RICO.").

**C.    Diversity Subject Matter Jurisdiction**

Yaghoobi does not invoke the court's diversity subject matter jurisdiction and she does

not identify a claim under state law. The court nonetheless observes that it does not appear that diversity subject matter jurisdiction exists. Even assuming that the parties in this action are citizens of different states or foreign states, *see* 28 U.S.C. § 1332 (a), the court cannot reasonably infer that the amount in controversy for any state claim Yaghoobi might assert would exceed $75,000. Although the amount in controversy "claimed by the plaintiff controls if the claim is apparently made in good faith," *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938), "a court can dismiss an action for insufficiency of the amount in controversy only when, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff was never entitled to recover a sum equal to, or in excess of, the jurisdictional minimum," *Esquilin-Mendoza v. Don King Productions, Inc.*, 638 F.3d 1, 4 (1st Cir. 2011) (citations omitted). Here, Yaghoobi does not indicate precisely what her damages are but nothing in her complaint suggests that the amount in controversy would exceed $75,000.[3]

### III. Motion for Appointment of Counsel

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1). However, a civil plaintiff lacks a constitutional right to free counsel. *See DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). The appointment of counsel for an indigent party is only required when exceptional circumstances exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights. *See id.* In considering whether the appointment of counsel is necessary, the court considers the "total situation," including "the merits of the case, the complexity of the legal issues, . . . the litigant's ability to represent himself," *id.* at 24, and the efforts the litigant has made to obtain legal representation.

---

[3] Yaghoobi indicates in her civil cover sheet that she seeks $15 million in damages, [ECF 1-2], but her complaint does not contain a request for monetary relief.

In the apparent absence of a claim over which the court has subject matter jurisdiction, this action does not present exceptional circumstances requiring the appointment of *pro bono* counsel. Accordingly, the request for appointment of counsel is denied without prejudice. If the court later orders that summonses issue, Yaghoobi may renew the motion for counsel once the defendants have responded to the operative pleading.

## IV.     Conclusion

In accordance with the foregoing, the court hereby orders:

(1)     The motion for leave to proceed *in forma pauperis* [ECF No. 2] is DENIED without prejudice. If Yaghoobi wishes to pursue this action, she should, no later than January 29, 2024, either (1) pay the $405 filing fee; or (2) file a renewed motion for leave to proceed *in forma pauperis* accompanied by supplemental financial information as outlined above. Failure to follow this directive could result in dismissal of this action by a District Judge.

(2)     If Yaghoobi wishes to purse this action, she should, no later than January 29, 2024, file an amended complaint which includes a claim over which this court may exercise subject matter jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C. § 1332. Failure to follow this directive could result in dismissal of this action by a District Judge.

(3)     The motion for appointment of counsel [ECF No. 3] is DENIED without prejudice.

(4)     The motion for expedited review [ECF No. 5] shall be terminated as moot.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 8, 2024